

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 17, 2023

BY CM/ECF

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re: United States v. Cooper Morgenthau
23 Cr. 2 (PAE)

Dear Judge Engelmayer:

The Government respectfully submits this letter in advance of the sentencing of defendant Cooper Morgenthau, scheduled for April 27, 2023. Morgenthau pled guilty to one count of wire fraud in connection with a scheme to embezzle more than $5 million from two special purpose acquisition companies ("SPAC"), where he served as the chief financial officer. For the following reasons, a below-Guidelines sentence of imprisonment would be sufficient but not greater than necessary to comply with the purposes of sentencing.

A. The Offense Conduct

The Government agrees with the statement of offense conduct set forth in the presentence investigation report, dated March 24, 2023 ("PSR"), which in summary was as follows. (PSR ¶¶ 7-24).

In or about March 2021, Morgenthau led the initial public offering of African Gold Acquisition Corp. ("AGAC" or "SPAC-1"), which raised approximately $414 million for the purpose of effecting a merger or other transaction focused on a target company in the gold mining sector. As the CFO of AGAC, Morgenthau had access to AGAC's operating bank account, but not the trust bank account that held the IPO proceeds. This operating account was used to pay AGAC's expenses, as the SPAC looked for a potential target to acquire.

Shortly after AGAC's IPO, in or about June 2021, Morgenthau began to embezzle money from its operating account, apparently to help to pay some expenses related to his wedding. To try to pay the money back, Morgenthau then embezzled more funds from the operating account and used that money to trade securities in his personal brokerage account, including options and equities of what are commonly called "meme stocks." Rather than making money, which would

have enabled Morgenthau to replace the stolen funds, Morgenthau's trading ultimately resulted in the loss of over $1 million in AGAC funds in about a month or so.

To try to conceal these improper withdrawals from AGAC, Morgenthau created fake statements for the operating account, which he provided to AGAC's accountant and auditor, knowing that the statements would be relied on in preparing the company's financial statements and SEC filings. As a result, AGAC falsely reported its cash balance on its SEC filings from Q2 2021 through Q1 2022.

Morgenthau was also the CFO of another SPAC, Strategic Metals Acquisition Corp. ("SMAC" or "SPAC-2"), which was in the process of raising money from private investors in anticipation of an IPO to target the acquisition of a company in the global strategic metals, mining, and processing sector. Between August 2021 and August 2022, SMAC raised approximately $4 million from investors.

To try to cover up his embezzlement from AGAC, Morgenthau began to steal funds from SMAC. Morgenthau wired some of these funds to AGAC's operating account to create the temporary impression that the AGAC account had the full amount it was supposed to have, including at the end of 2021 in connection with the year-end audit. Morgenthau used the remainder of SMAC's funds to trade securities and cryptocurrencies, again in the hope of earning back the money that he owed to both AGAC and SMAC. As before, Morgenthau's trading was unprofitable, and he lost all of the money that he embezzled from SMAC.

In total, between 2021 and 2022, Morgenthau embezzled approximately $5 million from the two SPACs.

B. The Guilty Plea

In the fall of 2022, after the Government served a Grand Jury subpoena on Morgenthau seeking certain documents associated with the fraud scheme, Morgenthau voluntarily met with the Government and confessed to his misconduct.

On January 3, 2023, Morgenthau waived indictment and pled guilty, pursuant to a plea agreement, to a one-count Information that charged him with wire fraud.

C. The Applicable Sentencing Guidelines

The Probation Department calculates a Guidelines calculation of 87 to 108 months' imprisonment. (PSR ¶ 98). The plea agreement calculates a Guidelines range of 70 to 87 months' imprisonment. The difference is the result of the Probation Department's applying a victim adjustment of two points, pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i). (PSR ¶ 36). The defendant does not dispute the application of this adjustment (Def. Mem. 10), nor does the Government. But for purposes of the sentencing proceeding, the Government stands by the Guidelines calculation in the plea agreement, which does not include the victim enhancement, and the resulting Guidelines range of 70 to 87 months.

D. The Appropriate Sentence

Under the factors set forth in 18 U.S.C. § 3553(a), the Government respectfully submits that a below-Guidelines sentence of imprisonment—even below the 70- to 87-month range set forth in the plea agreement—is sufficient but not greater than necessary to achieve the goals of sentencing.

1. The Nature and Circumstances of the Offense, Seriousness of the Offense, Need to Promote Respect for the Law, and Need for Just Punishment

A sentence of imprisonment is necessary in light of the nature and circumstances of the offense, the seriousness of the offense, the need to promote respect for the law, and the need for just punishment. *See* 18 U.S.C. §§ 3553(a)(1) & (2)(A). Morgenthau admits, as he must, that his crime was "serious." (Def. Mem. 12). As an experienced investment banker, including from his time at Citigroup and M. Klein & Company, and as the CFO of two SPACs, Morgenthau was a corporate adviser who understood the position of trust that AGAC's and SMAC's investors had placed in him. Morgenthau abused that trust and broke the law, stealing over $5 million in a year, including from family and friends. Furthermore, this was not a crime of necessity, but of opportunity and convenience. Morgenthau knew better. He is highly educated and enjoyed impressive professional success at a young age. When a seasoned Wall Street executive breaches the trust that he owes to his investors by misappropriating their money, a sentence of imprisonment is necessary to reflect the seriousness of the offense.

2. The History and Characteristics of the Defendant

The Government agrees with the defendant that his criminal conduct appears to be "aberrational," representing a deviation from an otherwise law-abiding life. (Def. Mem. 12). The Government moreover does not dispute that Morgenthau's history of addiction and mental health issues are properly considered by the Court. Also relevant is the fact that the defendant promptly accepted responsibility, admitting his misconduct to the Government and agreeing to plead guilty before he was even indicted or arrested. But the crime was unfortunately not an isolated occurrence or a momentary lapse in judgment. While Morgenthau apparently first began to embezzle from AGAC to help pay for his wedding-related expenses, he did not stop there. Instead, for over a year, he stole millions of dollars from the companies he ran to try to correct his initial missteps, and at the same time he continued to raise money from investors that he then stole. The defendant could have stopped at any point over that time, but did not.

3. The Need to Afford Adequate Deterrence

A sentence of imprisonment is also necessary to afford adequate deterrence. *See* 18 U.S.C. § 3553(a)(2)(B). General deterrence is particularly important in circumstances such as this, where sophisticated actors engage in brazen conduct and then try to cover their tracks. That said, the Government agrees with Morgenthau that it is unlikely that he will reoffend. (Def. Mem. 14-15). By confessing and accepting responsibility quickly and completely so early in the process, Morgenthau has demonstrated his contrition in a manner more valuable than mere words. While

that does not undo the significant harm Morgenthau has caused, the path he chose at the end—to face the consequences of his misconduct expeditiously and unconditionally—is one seldomly chosen by defendants, and the Government respectfully submits that the sentence imposed by the Court should recognize that Morgenthau took a lesser-trod path and encourage others to do the same.

* * * * *

While the Government believes that a sentence of imprisonment is necessary, the Government respectfully submits that this is not a case that requires a Guidelines sentence.

E. Forfeiture and Restitution

At the defendant's guilty plea, the Court entered a preliminary order of forfeiture in the amount of $5,111,355. Consistent with that Order, the Government requests that the Court order the defendant to forfeit $5,111,355.

Morgenthau has also agreed to pay restitution in the amount of $5,111,355. A proposed restitution order will be emailed to the Court for its consideration.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s/
Joshua A. Naftalis
Anden Chow
Assistant United States Attorneys

cc: Michael Paul Bowen, Esq.